UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:24-cv-00378

**Stacy Vernier,**
*Plaintiff,*

v.

**Smith County, Texas, et al.,**
*Defendants.*

# OPINION AND ORDER

This lawsuit concerns the suicide of Nathan Lee Johns during his confinement at the Smith County Jail. Defendant Turn Key filed a motion to dismiss for failure to state a claim. Doc. 18. The case was referred to a magistrate judge, who issued a report and recommendation to grant in part and deny in part the motion to dismiss. Doc. 44.

Defendant filed objections contending that plaintiff failed to adequately plead facts of (1) *Monell* liability, (2) a conditions-of-confinement claim, (3) an episodic-act-or-omission claim, (4) a failure-to-train claim, and (5) a medical-malpractice claim. Doc. 45. Plaintiff then filed a response arguing that this court should adopt the report in its entirety. Doc. 46. The court reviews the objected-to portions of a report and recommendation de novo. 28 U.S.C. § 636(b)(1). In conducting a de novo review, the court examines the entire record and makes an independent assessment under the law. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). For the reasons below, defendant's objections are overruled and its motion to dismiss (Doc. 18) is granted in part and denied in part.

## I. Basis for constitutional claim

The Fourteenth Amendment provides pretrial detainees the right to medical care and the right to be protected from known suicidal tendencies. *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020). A pretrial detainee may assert a § 1983 claim against a

jail operator on those grounds by attacking the jail's general conditions of confinement or the jail personnel's episodic acts or omissions. *Id.* (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc)). Plaintiff pleads both in the alternative. Doc. 15 at 5. The report concluded that, because plaintiff has stated a conditions-of-confinement claim, the court need not address plaintiff's episodic-acts-or-omissions theory. Doc. 44 at 7 n.2.

### A. Conditions-of-confinement objections

The court first addresses defendant's conditions-of-confinement objections. Defendant argues that plaintiff's allegations are isolated examples specific to decedent, rather than allegations of broad jail conditions applicable to all detainees. Doc. 45 at 6. Thus, defendant argues, the court should construe plaintiff's allegations as an episodic-acts-or-omissions claim, not a conditions-of-confinement claim. *Id.*

To state a claim under a conditions-of-confinement theory, a plaintiff must point to "a rule or restriction" at the jail or "otherwise demonstrate the existence of an identifiable intended condition or practice." *Hare*, 74 F.3d at 645. Though a condition of confinement "is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation," it can also be "an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 645). "[I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Id.*

Plaintiff alleges that defendant's "evaluation, monitoring, and treatment of detainees [were] . . . grossly inadequate due to . . . [defendant's] poor or nonexistent procedures and staffing low-level medical personnel who could not diagnose detainees or make medical assessments." Doc. 25 at 26 (citing Doc. 15 at 56). Plaintiff supports that theory with extensive factual allegations

concerning defendant's neglectfulness of decedent's medical needs and of other inmates' medical needs in comparable situations. For instance, plaintiff alleges that (1) defendant failed to "complete a medical intake for [decedent] until three days after he was initially incarcerated"; (2) defendant withheld from decedent his mental-health medications for his "schizoaffective disorder," despite decedent's requests; and (3) defendant failed to administer—or even open—decedent's prescribed medications. Doc. 15 at 10, 19–21. Plaintiff alleges that defendant has policy of not administering a detainee's medication unless another doctor approves it. *Id.* at 21. She alleges that defendant has withheld medications from other detainees who eventually suffered harm from not taking their medications. *Id.* at 55–58. She points to defendant's contract with Smith County, which she claims established a series of policies to save costs, including "fail[ing] to provide or delay[ing] . . . medical treatment to detainees" and failing to "address observed serious mental health issues while monitoring detainees." *Id.* at 36. Lastly, as the report observed, plaintiff also cites several reports by the Texas Commission on Jail Standards (TCJS) to allege that defendant failed to comply with supervision standards, failed to conduct proper medical screening, and repeatedly failed to administer medications. Doc. 44 at 10 (citing Doc. 15 at 40–51).

Those factual allegations plausibly establish the existence of unconstitutional conditions of confinement. The allegations of decedent's personal interactions with defendant's medical system are consistent with the allegations of the pervasive failure to provide medical treatment. Those allegations go beyond isolated incidents to something systemic. They make plausible a "pervasive pattern of serious deficiencies" in providing constitutionally adequate medical care and therefore suffice to state a conditions-of-confinement theory. *Shepherd*, 591 F.3d at 454.

Defendant insists that the complaint's focus on a single victim renders this an episodic-acts-or-omissions case, not a conditions-of-confinement case. Doc. 45 at 5–6. However, while plaintiff

"seek[s] damages for the harm to a single detainee, . . . the alleged cause of the harm is the broader 'conditions, practices, rules, or restrictions'" that decedent encountered at the jail. *Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *9 (5th Cir. June 26, 2024) (per curiam) (unpublished) (concluding that plaintiffs in a jail-suicide case "properly asserted a conditions claim"), *cert. denied*, 145 S. Ct. 1061 (2025). Multiple district courts in the Fifth Circuit, including this one, have reasoned similarly. *See, e.g.*, *Newman v. Smith Cnty.*, No. 6:24-cv-00144, 2025 WL 901258, at *7–8 (E.D. Tex. Mar. 25, 2025); *see also Palo v. Dallas Cnty.*, No. 3:05-cv-00527, 2007 WL 2140590, at *4–5 (N.D. Tex. July 26, 2007) (concluding that the plaintiff's conditions-of-confinement pleadings were sufficient where plaintiff "[did] not focus solely on the acts or omission of the staff on duty at the Jail . . . [but] also attack[ed] the Jail medical care system itself"); *Loftis v. Dallas Cnty.*, No. 3:10-cv-00116, 2011 WL 4090962, at*5 (N.D. Tex. Sept. 14, 2011) (finding that plaintiff adequately pleaded a conditions-of-confinement claim when he alleged "injuries [that] were *caused* by the Dallas County Jail's unconstitutional medical care *policies*" even though his pleadings may be "read to implicate the acts of individuals").

Thus, plaintiff has met her pleading burden to state a valid conditions-of-confinement claim. Defendant's objections are overruled.

### B. Episodic-act-or-omission objections

Defendant also seems to object to the report's conclusion regarding plaintiff's episodic-act-or-omission claims. Doc. 45 at 8 ("the District Court should decline to adopt this portion of the Report and Recommendation"). But the report did not analyze plaintiff's episodic-act-or-omission claims because the report concluded that plaintiff had adequately pleaded the conditions-of-confinement claim. Doc. 44 at 7 n.2 (concluding that the case should proceed on a conditions-of-confinement theory). The court finds no error here and overrules defendant's objection. *Cf. Stingray IP Sols., LLC v. Signify N.V.*, No. 2:21-cv-00044, 2021

WL 9095764, at *3 (E.D. Tex. Oct. 25, 2021) ("The Court ultimately concludes that [defendant] is subject to personal jurisdiction under a stream-of-commerce theory. Therefore, the Court denies the Motion to Dismiss on this ground and needs not address [plaintiff's] alternate theories.").

Plaintiff has adequately pleaded a constitutional violation under a conditions-of-confinement theory.

### II. *Monell* objections

Merely pleading unconstitutional conditions is not enough. To hold a municipality liable for a constitutional violation under § 1983, a plaintiff must satisfy the requirements set forth in *Monell v. Department of Social Services*. 436 U.S. 658 (1978). So to state its constitutional claim against defendant Turn Key,[1] plaintiff must allege that there is "(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (citing *Monell*, 436 U.S. at 694). The court turns to defendant's *Monell* objections.

#### A. Policy, practice, or custom

Defendant objects to the report's finding that plaintiff has pleaded an official policy of defendant's. Doc. 45 at 2. Specifically, defendant argues that the report erred when it credited plaintiff's "conclusory list" of policies or customs without any corresponding allegations that these policies or customs were widespread, persistent, or connected to decedent's death. *Id*.

The standard for showing a policy is essentially the same as the standard for showing the existence of a condition of confinement. *Duvall v. Dallas Cnty.*, 631 F.3d 203, 208 (5th Cir. 2011) ("We see no meaningful difference between these showings."). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled

---

[1] It is undisputed that defendant Turn Key, a private organization, is subject to the municipal-liability principles set forth in *Monell*. Doc. 44 at 11.

as to constitute a custom that fairly represents municipal policy." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quotation marks omitted). In the absence of alleged written customs or policies, the Fifth Circuit requires "specific past instances to allege municipal liability." *Newman*, 2025 WL 901258, at *3 (quoting *Bond v. Nueces Cnty.*, No. 20-40050, 2022 WL 4595000, at *5 (5th Cir. Sept. 30, 2022) (unpublished)). "These instances must be pleaded with 'specificity' and 'similarity' to each other." *Id.* (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017)).

Defendant's objections to the report's official-policy conclusion fail for similar reasons as its objections on conditions of confinement. Contrary to defendant's reading of the report, the court is not construing the existence of one incident as evidence of a pattern or practice. Doc. 45 at 3. Plaintiff alleges a history of systemic issues in Smith County Jail that have resulted in the deaths of several detainees under Turn Key's care, including decedent. Here are some examples:

- alleging that "people who worked at the jail could not administer the medications without a doctor approving their administration," Doc. 15 at 21;

- alleging that "during the past 10 years, at least 50 people under Turn Key Health's care died," *id.* at 28;

- citing a 2022 inspection finding that "Smith County did not have 24/7 detainee classification coverage to meet needs of the jail" and that the "jail also had issues in maintaining full staffing in the booking area," *id.* at 40;

- citing a 2016 inspection finding that the jail failed to provide medications to a detainee as ordered by a physician, *id.* at 46;

- citing a 2024 inspection finding that the jail failed to comply with the TCJS's minimum standards in "provid[ing] procedures for distribution of prescriptions in accordance with written instructions from a physician by an

- appropriate person designated by the sheriff or operator," *id.* at 50; and
- alleging six other deaths in Smith County Jails by suicide, *id.* at 52.

Those allegations support the existence of pervasive problems—both explicit policies and implicit customs—consistent with the problems behind decedent's suicide. *See also Valentine v. Smith Cnty.*, No. 6:24-cv-00331, Doc. 45 at 6 (E.D. Tex. May 30, 2025) (finding that the plaintiff sufficiently pleaded a de facto policy under *Monell* where he "allege[d] that these practices or de facto policies of confinement resulted in the deaths of numerous detainees under Turn Key's care, including [plaintiff]"). Thus, defendant's objections that plaintiff failed to sufficiently allege an official policy, practice, or custom are without merit and overruled.

### 1. Failure to train

Defendant also objects that plaintiff fails to plead deliberate indifference, an element of a failure-to-train claim. Doc. 45 at 8; *see Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("a municipality's failure to train its employees . . . must amount to deliberate 'indifference'" (quotation marks omitted). As the report noted, an official policy can take the form of a failure to train. *See* Doc. 44 at 14. However, failure to train falls under the episodic-acts-and-omissions rubric, not conditions of confinement. *Sanchez*, 956 F.3d at 792. For the same reason that the court does not need to address the episodic-acts-or-omissions objections, the court does not need to address the failure-to-train objections. *See supra* subsection I.B.

In sum, plaintiff has sufficiently pleaded the existence of an official policy of unconstitutional conditions of confinement. The remaining two elements focus on whether defendant is responsible for the policy and whether the policy caused the injury.

### B. Policymaker

Defendant objects on the policymaker prong. Doc. 45 at 3. Although defendant acknowledges that plaintiff names defendant's

medical director, Dr. William Cooper, as defendant's official policymaker, defendant argues that plaintiff nonetheless fails to plead that Dr. Cooper had final policymaking authority or that Dr. Cooper personally created or ratified the alleged unconstitutional policies. *Id.* at 3–4.

Under *Monell*'s policymaker element, a plaintiff ordinarily must allege that the policies in question are attributable either to "the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). But the court affords plaintiff leniency in identifying the *specific* policymaker. *Newman*, 2025 WL 901258, at *4. "[C]ourts should not grant motions to dismiss for failing to plead the specific identity of the policymaker." *Id.* (quoting *Groden v. City of Dallas*, 826 F.3d 280, 284–85 (5th Cir. 2016)). That is because the identity of the policymaker at issue is a question of state law, and courts should not grant motions to dismiss § 1983 cases for imperfect statements of legal theory. *Id.* Plaintiff, therefore, need only plead facts that "establish that the challenged policy was promulgated or ratified by the city's policymaker." *Groden*, 826 F.3d at 285.

Plaintiff alleges facts sufficient to plausibly establish that some individual employed by defendant, or defendant itself, acted as the policymaker regarding the jail's medical policies, practices, and procedures. According to plaintiff's complaint, Smith County Jail and defendant entered into an "Agreement for Comprehensive Health Services," whereby the jail delegated its medical-care duties to defendant. Doc. 15 at 29. Defendant also "developed and maintained the County jail's healthcare policies and procedures manual." *Id.* at 34. Those allegations, taken as true, support the plausible inference that defendant or one of its officers was the policymaker responsible for the allegedly unconstitutional policy, practice, or custom. And they go beyond what the plaintiff did in *Newman*, where the allegations were directed to two different Turn Key entities and were still sufficient. *Newman*,

2025 WL 901258, at *4. Defendant's objections regarding *Monell*'s policymaker element are therefore overruled as well.

### C. Moving force

Defendant further argues that plaintiff fails to allege facts demonstrating that defendant's policies were the moving force behind the constitutional deprivation. Doc. 45 at 4. Specifically, defendant argues plaintiff does not plausibly allege that decedent's medication was medically appropriate to stop suicidal tendencies, that a doctor refused to give decedent his medication after an evaluation, or that decedent's medication would have prevented decedent's suicide. *Id.*

Under *Monell*'s causation element, a "direct causal link between the municipal policy and the constitutional deprivation" must exist such that the policy is the "moving force" behind the constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001).[2] But the court does not require a plaintiff to allege that a "policy or practice [was] the *exclusive* cause of the constitutional deprivation." *Sanchez*, 956 F.3d at 795 (quoting *M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 254 (5th Cir. 2018)). The court instead considers "how individual policies or practices interact with one another within the larger system." *Abbott*, 907 F.3d at 255. "This is because confinement conditions may be constitutionally inadequate if, when viewed in combination, they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Sanchez*, 956 F.3d at 795 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

---

[2] The Fifth Circuit has suggested before that the constitutional violation lies in "the conditions themselves"—the policies and customs preventing inmates access to adequate medical and suicide-prevention care. *Cope*, 2024 WL 3177781, at *8 (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) ("the conditions themselves constitute the harm")). But it seems that, in cases like this one, the proper analysis for the third *Monell* prong is to ask whether the policies caused the suicide. *See Est. of Bonilla v. Orange Cnty.*, 982 F.3d 298, 312 (5th Cir. 2020) (examining the causal relationship between the defendant's alleged policy of denying prescriptions and the decedent's suicide). Otherwise, the court would simply be asking whether the policies caused the policies.

Here, plaintiff contends that if not for defendant's policies, pursuant to which decedent was withheld care, his death would not have occurred. Doc. 15 at 60. It is wholly plausible that the policies and customs identified above had a "mutually enforcing effect" in working to bring about the death and that the death would not have happened otherwise. *Sanchez*, 956 F.3d at 795 (quoting *Wilson*, 501 U.S. at 304); *see also Valentine*, No. 6:24-cv-00331, Doc. 45 at 10 (finding that plaintiff adequately pleaded moving force where she contended that "absent Turn Key's practice or de facto policy of failing to provide emergency medical care under the circumstances here, [the decedent's] death would not have occurred"). Put differently, if decedent would have received adequate medical care, it is reasonable to infer that decedent probably would not have committed suicide.

Although defendant cites *Estate of Bonilla v. Orange County*, that case does not dictate a different outcome. For one, the Fifth Circuit's holding in *Estate of Bonilla* affirmed the district court's summary judgment; it did not involve a motion to dismiss, where the court must accept plaintiff's well-pleaded facts as true. *Est. of Bonilla*, 982 F.3d at 312.

And the facts are distinguishable anyway. The court in *Estate of Bonilla* held that plaintiff failed to create a fact issue as to causation because (1) there was no evidence that the decedent requested his medication; (2) there was no evidence that the decedent exhibited any symptoms of withdrawal while in custody; (3) the decedent had informed defendant that she had already taken her prescribed medications on the day in question; and (4) there was no evidence of how often the decedent needed to take her medications. *Id.* at 311. Based on those considerations, the court held that there were "crucial gaps between the Defendants' failure to provide Xanax and [the decedent's] decision to take her own life." *Id.*

But here, plaintiff alleges that decedent and his family requested that defendant administer decedent's mental-health medications. Doc. 15 at 21–22. Plaintiff further alleges facts suggesting

- 10 -

that defendant's employees were on notice that decedent was experiencing a mental health crisis from the moment he arrived at the jail—including from decedent's attempt to hang himself. *Id.* at 18. And plaintiff alleges that defendant's records indicated that suicide precautions were necessary and that an urgent mental health referral was necessary. *Id.* at 19. It is therefore plausible to infer that, but for defendant's unconstitutional policies, decedent would have received the care he needed and not committed suicide.

Plaintiff's moving-force allegations suffice. Defendant's objection is therefore overruled.

### III. Medical-malpractice objections

Finally, defendant argues that plaintiff fails to allege the applicable standard of care for her medical-malpractice claim. Doc. 45 at 9. Defendant argues that the report erred in not dismissing plaintiff's claim because plaintiff fails to articulate the standard of care defendant owed to a pretrial detainee with the decedent's particular medical history. *Id.*

In Texas, a plaintiff asserting a medical-malpractice claim bears the burden of proving (1) the applicable standard of care, (2) breach of that standard, (3) injury, and (4) a causal connection between the breach of care and the injury. *See Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (citing *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003)).

The standard of care to which a corporate medical provider like defendant must adhere is what an "ordinary" such provider "would have done under the same or similar circumstances." *Denton Reg'l Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 950 (Tex. App. 1997) (cited by *Quijano*, 325 F.3d at 567); *see also* Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) (defining health-care liability to require "departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care"). That includes the "duty to use reasonable care in formulating the policies and procedures that govern its medical staff and nonphysician personnel." *LaCroix*, 947

S.W.2d at 950. At trial, a plaintiff will ordinarily need expert testimony to establish the applicable standard of care. *Hannah*, 523 F.3d at 601. At this stage, however, the court takes plaintiff's well-pleaded fact allegations as true. *Taylor v. City of Shreveport*, 798 F.3d 276, 286 (5th Cir. 2015).

The court's decision in *Valentine v. Smith County* provides a helpful analog. No. 6:24-cv-00331, Doc. 45 at 12. The court in *Valentine* held that the plaintiff adequately alleged the standard of care Turn Key owed by pointing to Turn Key's contract with Smith County, to a Turn Key policy manual, and to the TCJS. *Id.* (citing *Albritton v. Henderson Cnty.*, No. 3:23-cv-01723, 2024 WL 1776380, at *4 (N.D. Tex. Apr. 23, 2024)).

Likewise here. Plaintiff alleges that defendant owed decedent a duty of care to "secure and administer to the decedent needed mental health medications and to assure that the decedent was housed and/or observed appropriately, considering his actively suicidal state." Doc. 15 at 63. Plaintiff identifies the contract between defendant and Smith County that described defendant's various contractual obligations to provide medical care to those persons housed in the Smith County Jail. *Id.* at 27–32. Plaintiff alleges that, under that contract, defendant had a duty to "comply with standards set forth by the Texas Department of Health and TCJS, as well as other applicable federal, state, or local standards for correctional institutions and medical care." *Id.* at 30. Those allegations map on to the state-law standard of care and establish the standard that a reasonable provider in defendant's position would have observed. The court accordingly overrules defendant's medical-malpractice objection.

### IV. Vicarious liability

The magistrate judge recommended granting defendant's motion only to the extent that plaintiff asserts a theory of vicarious liability against defendant based on alleged constitutional deprivations caused by defendant's employees. Doc. 44 at 21. Plaintiff does not object to that recommendation, Doc. 46 at 9, and the court finds no clear error. *Cf. Monell*, 436 U.S. at 691 ("we

conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory").

## V. Conclusion

Having reviewed the magistrate judge's report and defendant's objections de novo, the court overrules defendant's objections. The court accepts the findings and recommendations of the magistrate judge's report. It is therefore ordered that defendant's motion to dismiss (Doc. 18) is granted as to any theory of vicarious liability on the constitutional claims and otherwise denied.

*So ordered by the court on August 29, 2025.*

J. CAMPBELL BARKER
United States District Judge